UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIE E. GILLETT,

      Plaintiff,

v.                                                            Case No:   6:15-cv-1720-Orl-DNF

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

**<u>OPINION AND ORDER</u>**

Plaintiff, Willie E. Gillett, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

The regulations set forth an 8-step sequential evaluation to be utilized to determine if a Plaintiff's disability continues. *See* 20 C.F.R. § 404.1594(f). This process includes an analysis of whether Plaintiff: (1) is engaging in substantial gainful activity; (2) has an impairment or combination of impairments which meets or equals the severity of one of the impairments listed in appendix 1 of this subpart; (3) has medical improvement occurred, i.e., any decrease in medical severity of the impairment(s); (4) if improvement occurred, does it relate to the ability to work, i.e., increases the claimant's RFC; (5) if there was no medical improvement, then does one of the two groups of exceptions apply; (6) if medical improvement is shown to be related to your ability to work or if one of the first group of exceptions to medical improvement applies, then are the claimant's current impairments in combination severe, i.e, significant limit the ability to do basic work activities; (7) can perform his past relevant work, in light of his RFC; and (8) can make an adjustment to other work, in light of his RFC, age, education, and work experience. 20 C.F.R. § 404.1594(f).

### C. Procedural History

Plaintiff received a protective filing date for an application for DIB on August 26, 2011, alleging an onset date of May 12, 2011. (Tr. 264, 309). On April 30, 2012, Plaintiff filed an application for SSI alleging an onset date of May 12, 2011. (Tr. 291). Plaintiff's applications

were denied initially on February 28, 2012, and upon reconsideration on May 21, 2012. (Tr. 138-42, 147-56). At Plaintiff's request, a hearing was held before Administrative Law Judge Valencia Jarvis ("the ALJ") on December 12, 2013. (Tr. 43-95). On March 17, 2014, the ALJ entered a partially favorable decision finding that Plaintiff was disabled from May 12, 2011, through August 28, 2012. (Tr. 20-41). Plaintiff filed a request for review on March 24, 2014, and the Appeals Council denied Plaintiff's request on August 13, 2015. (Tr. 6-8). Plaintiff initiated this action by filing a Complaint (Doc. 1) on October 13, 2015.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 12, 2011, the date Plaintiff became disabled. (Tr. 24). At step two, the ALJ found that from May 12, 2011, through August 28, 2012, the period which Plaintiff was under a disability, that Plaintiff had the following severe impairments: mild facet arthropathy bilaterally at L4-5 and L5-S1, moderate central right paravertebral herniated disc at C4-5, and moderate osteophyte complex at C5-6. (Tr. 24). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 from May 12, 2011, through August 28, 2012. (Tr. 27).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") from May 12, 2011, through August 28, 2012, to "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he could not engage in work activity for a full 8 hour workday on a regular continuing basis." (Tr. 25). The ALJ found that from May 11, 2011, through August 28, 2012, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant number in the national economy that Plaintiff could have performed. (Tr. 28). The

ALJ found that Plaintiff was under a disability from May 11, 2011, through August 28, 2012.  (Tr. 29).

The ALJ found that Plaintiff had a medical improvement on August 29, 2012.  (Tr. 29). The ALJ found that the medical improvement related to his ability to work because it increased his RFC, so that as of August 29, 2012, Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can never climb ladders, ropes or scaffolds, he can occasionally climb stairs and ramps, and he can occasionally stoop, kneel, crouch, and crawl." (Tr. 29-30).  The ALJ found that Plaintiff could still not return to his past relevant work after his medical improvement, that there have been jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically, such jobs as "assembler I," "counter clerk," and "photo copy machine operator."  (Tr. 34).  The ALJ concluded that Plaintiff's disability ended August 29, 2012.  (Tr. 35).

## II.    Analysis

Plaintiff raises two issues in the joint memorandum: (1) "[w]hether the commissioner satisfied his burden to prove medical improvement and residual functional capacity of light work based on substantial evidence and an adequate rationale," and (2) "[w]hether the ALJ gave proper weight based on a sufficient rationale and substantial evidence to the opinions of physicians of record in determining Plaintiff had a residual functional for light work after August 29, 2012." (Doc. 18 p. 16, 26).  As the issues raised by Plaintiff are closely related the Court will analyze them together.

Plaintiff argues that the ALJ's finding that as of August 29, 2012, Plaintiff's RFC increased from sedentary part-time work to full-time light work was not supported by substantial evidence and, thus, Defendant failed to carry her burden of proving Plaintiff's disability ended.  (Doc. 18 p.

17-18).   Plaintiff contends that the ALJ cites no medical evidence to support his finding that Plaintiff had the RFC to perform light work as of August 29, 2012, but rather the evidence shows Plaintiff continued to be disabled past this date.  (Doc. 18 p. 18-20).  Plaintiff argues that the ALJ erred by failing to specify the weight given to the opinion of Plaintiff's treating physician, Richard Hynes, M.D., and further erred by finding that the opinion of state agency physician James Patty, M.D., supported her decision despite the fact that the opinion was offered before Plaintiff underwent cervical fusion surgery which the ALJ found ended Plaintiff's disability.  (Doc. 18 p. 29, 31).

In response, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff experienced medical improvement on August 29, 2012, such that Plaintiff was capable of a reduced range of light level work.  (Doc. 18 p. 20-26).   In addition, Defendant contends that while the ALJ did not specifically state the weight accorded to Dr. Hynes opinion, it is apparent from the ALJ's analysis that she discounted it, and gave many reasons for doing so.  (Doc. 18 p. 33).   Finally, Defendant contends that the ALJ properly weighed and considered the opinion of Dr. Patty.  (Doc. 18 p. 34).

A review of the medical record is in order.  The record shows that Plaintiff's relevant medical problems began on May 12, 2011, when Plaintiff was involved in an automobile accident while working. (Tr. 54, 396, 413).   Though his doctors noted no fractures, dislocations, or destructive processes, they did indicate "early" degenerative joint disease with "mild" scoliosis in his cervical spine. (Tr. 401-404).  Plaintiff's lumbar spine had mild left lateral convexity scoliosis and no acute bone abnormality.  Over the following nine months, Plaintiff alleged continued pain following completing physical therapy. (Tr. 448-456).   By March 24, 2012, Plaintiff saw Dr. Hynes, an orthopedic surgeon, who examined Plaintiff and recommended neck surgery.  (Tr. 463).

Dr. Hynes explained that the "primary focus" had been on Plaintiff's neck and they would resolve it first, before addressing his low back condition. (Tr. 463).  On July 3, 2012, Dr. Hynes performed neck surgery on Plaintiff. (Tr. 491).

On July 5, 2012, a few days after surgery, Dr. Hynes' physician's assistant (PA) noted Plaintiff was doing significantly better, told Plaintiff he "is not eligible for Permanent Disability," and limited Plaintiff to no repetitive bending, stooping, twisting or overhead reaching. (Tr. 494). Dr. Hynes' assistant did not indicate those post-surgery restrictions were more than temporary.  He also offered him Temporary Disability until he saw Dr. Hynes on October 11. (Tr. 494).  By July 19, 2012, Dr. Hynes' PA noted Plaintiff was "actually doing reasonably well," his x-rays "look[ed] perfect" and his interbodies and cervical plate were well positioned, with no loosening. (Tr. 496). Upon physical examination, Plaintiff's neurological results were 5/5 for testing from his C4 to T1, with no deficit. (Tr. 496).

On July 31, 2012, Dr. Voepel prescribed Percocet and diagnosed neck pain, depression, migraines, and difficulty swallowing. (Tr. 499).  However, when Plaintiff's drug test came back positive for marijuana and oxycodone, she declined to prescribe narcotics. (Tr.. 499).  By August 16, 2012, Dr. Hynes noted Plaintiff was doing reasonably well, despite increasing pain due to lack of pain medication.  (Tr. 500).  On August 28, 2012, the last day of Plaintiff's disability, Dr. Hynes noted x-rays showed the fusion affixing C4 to C6 was stable and healing well.  (Tr. 502).  Though Plaintiff complained of his left fingers "locking up," sensations were normal throughout the dermatomal regions in the upper extremities and his fine motor skills were intact in his left upper extremity. (Tr. 502).  Plaintiff's strength and hand grasp was a 5/5. (Tr. 502).  While Plaintiff also complained of numbness and tingling in the C7 area, Dr. Hynes noted that numbness and tingling

corresponded to the level below the fusion.  (Tr. 502).  Dr. Hynes noted no symptoms resulting from lumbar spine impairment. (Tr. 502).

On October 11, 2012, Plaintiff reported some improvement but still gets some neck pain, still gets locking up in the middle 2 fingers of the left hand which feel like spasms. (Tr. 504). Overall, Plaintiff claimed to be doing "pretty well." (Tr. 504).  On exam, Dr. Hynes noted a loss of grip strength and spasm in his fingers when he tries to grip things on the left with his middle fingers. (Tr. 504).  Dr. Hynes found Plaintiff neurologically intact and opined his anatomy is "practically normal," though it would take 6 months to a year to determine the final outcome of the surgery. Dr. Hynes advised Plaintiff to increase both his activity and range of motion. Dr. Hynes noted that once he could confirm a good outcome to the cervical procedure, he would start to treat the back problem. (Tr. 504).

On November 13, 2012, Dr. Hynes opined the cervical fusion was stable. (Tr. 506). Plaintiff still complained of isolated neck pain that is a low grade 4/10. The low back pain increased and radiated into the left leg in a L4-5 distribution. (Tr. 506).  On exam, Dr. Hynes noted guarding and tenderness in the midcervical paravertebral muscles. Plaintiff had restriction during lateral rotation and bending, 10 degree extension. Dr. Hynes noted low back tenderness starting with a 10-degree extension job and forward flexion somewhere around 40 to 60 degrees. (Tr. 506).  Dr. Hynes noted numbness and tingling in the right arm along a C7 distribution and C6 distribution of the left leg, L4-5 distribution at soft touch and pin prick was diminished. Dr. Hynes noted no give way during testing of his tibialis anterior. Mild give way of the left knee, 4/5 on the right side, 5/5 contralateral straight leg raise on the right. R. 506. Dr. Hynes opined the neck surgery was stable. Dr. Hynes noted, "I have given him limitations in reference to his neck, which are ongoing…. He

remains out of work for now. Once I see the additional diagnostics we can tailor the paper work in reference to the lumbar spine, which is currently not available." (Tr. 507).

On November 13, 2012, Dr. Hynes completed a form for Disorders of the Spine. (Tr. 527). Dr. Hynes was asked to offer his "best estimation of what the patient's functional condition will be 12 months post-op." (Tr. 528). Dr. Hynes noted Plaintiff experienced drowsiness, nausea, and decreased concentration as a side effect of the medications. Dr. Hynes noted limitations of lumbar spine motion (20 degrees forward flexion, 10 degrees extension) due to pain. Dr. Hynes noted limitations of cervical spine motion (20 degrees forward flexion, 10 degrees extension, 2 degrees left lateral flexion, 4 degrees right lateral flexion, 2 degrees left rotation, 4 degrees right rotation). R. 528. Plaintiff had positive supine left straight leg raise findings at 60 degrees and positive sitting left straight leg raise findings at 40 degrees. Dr. Hynes opined Plaintiff needs to change body position or posture to lesson otherwise intractable pain every 1 to 2 hours. Dr. Hynes also noted Plaintiff's treatment has significantly relieved his pain. (Tr. 530). Dr. Hynes noted Plaintiff had adverse side-effects that affect attention, specifically drowsiness that affects attention – "daily to QOD (every other day). (Tr. 530). Regarding ambulatory ability, Dr. Hynes opined Plaintiff cannot walk without the use of a hand-held assistive device that limits the functioning of both upper extremities, though Dr. Hynes noted Plaintiff does not require bilateral upper limb assistive devices. However, Dr. Hynes further opined that Plaintiff was able to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. (Tr. 531). Dr. Hynes did not know whether Plaintiff could stand and/or walk 6-8 hours daily on a long term basis. Dr. Hynes opined Plaintiff could lift and/or carry 20 pounds frequently and stoop occasionally while carrying the weight. (Tr. 532-33). Finally, Dr. Hynes opined, based on his professional experience and not Plaintiff's attendance at doctor appointments or Plaintiff's "medical condition," that

Plaintiff would on average be likely absent from work more than 3 times a month as a result of his impairments or treatment.  (Tr. 533).

On November 26, 2012, Plaintiff saw Dr. Marlon Adler for a CT scan of his cervical spine. (Tr. 508).  Dr. Adler recognized Plaintiff's C4 to C6 fusion surgery. (Tr. 508).  Dr. Adler noted Plaintiff had a mild left neural foraminal narrowing at C2-3, with his central canal and right neural foramen within normal limits. (Tr. 508). Dr. Adler opined Plaintiff had minimal narrowing at C3-4, but his central canal was within normal limits. (Tr. 508). Dr. Adler found Plaintiff had no evidence of disc bulge or focal disc protusion at C4-5, and Plaintiff's central canal and neural foraminals were within normal limits. (Tr. 508). Plaintiff's central canal was within normal limits at C5-6, with "minimal" joint hypertrophy and mild bilateral neural foraminal narrowing. (Tr. 509).

In cessation cases, the burden is on the Commissioner to prove that the claimant is no longer disabled as of the cessation date because the Plaintiff had experienced "medical improvement." *See Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982) (holding that in cessation of disability cases, "medical improvement standard" places burden on government to prove that the claimant is no longer disabled as of cessation date), *superceded by statute on other grounds as stated in Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1214 (11th Cir.1991); *Huie v. Bowen,* 788 F.2d 698 (11th Cir.1986) (benefits could not be terminated until medical improvement was shown by Commissioner).  Medical improvement is "any decrease in the medical severity" of a claimant's impairment that was present at the time of the most recent favorable decision.  *See* 20 C.F.R. § 404.1594(b)(1).  A decrease in medical severity "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings" associated with the impairment. *See id.*

In this case, the Court finds that the Commissioner failed to carry her burden of establishing that Plaintiff had experienced a medical improvement on August 29, 2012, such that he could perform a reduced range of light work as found by the ALJ. As Plaintiff points out, the ALJ cites to no evidence supporting her finding that Plaintiff could perform light work. Light work requires an individual to be capable of lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Light work requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* While the ALJ reviewed and summarized Plaintiff's medical records after his spinal fusion surgery, the ALJ failed to cite to any evaluations of Plaintiff's functional capacity showing increased capacity.

The ALJ appears to have misunderstood the burden of proof in a cessation case like this one by basing her decision on the fact that the record did not show that Plaintiff **could not** perform light work. For example, the ALJ provided that "[t]here is little evidence that indicates that the claimant is not capable of engaging in work activity due to low back pain," "Dr. Hynes did not find claimant to be permanently disabled by his condition," and "Dr. Hynes did not state, however, that the claimant could not perform any work of any kind." (Tr. 32). Thus, rather than provide evidence showing that Plaintiff was capable of performing a reduced range of light work, the ALJ erroneously placed the burden of proof on Plaintiff to show he could not perform light work. This error is most apparent in the ALJ's explanation that

> there is no evidence to contradict the finding that the claimant can engage in a limited range of light work as there is no evidence that his low back or neck pain impedes his ability to lift and carry light weights of no more than 20 pounds occasionally or 10 pounds frequently, nor is he prevented from sitting, standing, and walking for 6 hours each during an 8 hour workday or from doing unlimited pushing and pulling.

(Tr. 32-33). The ALJ erred by shifting the burden of proof onto Plaintiff to prove that he could not perform light work.

In addition, the Court finds that the opinion evidence does not constitute substantial evidence supporting the ALJ's conclusion that Plaintiff could perform a reduced range of light work. Defendant contends that although the ALJ did not specifically state the weight that was accorded to Dr. Hynes opinion from November 2012 it is apparent from her discussion that the ALJ discounted it. The Court does not find it so apparent. While it is evident that the ALJ took issue with portions of Dr. Hynes opinion (e.g., his findings that Plaintiff could not walk without an assistive device and that he would be absent from work 3 times a month), the ALJ seems to give weight to other portions of the opinion (e.g., Dr. Hynes finding that Plaintiff could lift and carry up to 20 pounds frequently and occasionally). (Tr. 33).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The ambiguity the Court faces in reviewing the ALJ's consideration of Dr. Hynes' opinion is exactly the problem that the Eleventh Circuit sought to prevent in *Winschel*.  On one hand it seems that the ALJ is discounting Dr. Hynes opinion because it is inconsistent with Plaintiff's medical record, while on the other hand the ALJ seems to give weight to portions of the opinion that lie in favor of the ALJ's RFC finding.  On remand, the ALJ should explain the precise weight given to Dr. Hynes' opinion and, if necessary, explain why she accepts some portions of the opinion while discounting others.

As to the opinion of state agency medical consultant Dr. Patty from May 2012, the Court agrees with Plaintiff that this opinion does not constitute substantial evidence that Plaintiff had a medical improvement on August 29, 2012.  As Plaintiff notes, this opinion was given before Plaintiff underwent cervical fusion surgery and does not address Plaintiff's condition after the procedure.  Confusingly, the ALJ gave little weight to this opinion in finding that Plaintiff was disabled through August 28, 2012, but later concurred with the assessment "as it is supported by the objective evidence of record including that of Dr. Hynes in November of 2012." (Tr. 33).  It is unclear how Dr. Patty's opinion was entitled to "little weight" at the time it was offered, but "is supported by objective evidence" months after Plaintiff underwent back surgery.  The ALJ failed to establish that Plaintiff underwent a medical improvement that increased his RFC so that he was capable of performing a reduced range of light work.

### III.   Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties